liPER CURIAM.
Writ granted. The judgment of the court of appeal is reversed and judgment is entered dismissing plaintiffs lawsuit against applicant, Jennifer Palmer.
Glenn Hebert, a vocational rehabilitation counselor, filed suit against Ms. Palmer, her company, Jennifer Palmer & Company, and Louisiana Association of Rehabilitation Professionals, Inc. (“LARP”) for defamation damages arising from the publication of an article written by Ms. Palmer entitled “Remembering the Rehabilitation Warrior,” and published in the March 1990 edition of Louisiana Rehabilitation. The article, a tribute to Ms. Palmer’s friend and colleague, Gene Bohlken, appeared as follows:
The long battle ended on January 19, 1990 for Gene Bohlken who died, friends said, still fighting ... a true warrior. Gene was never one to give up easily.
As a Rehabilitation Specialist with the U.S. Department of Labor, Gene Bohlken fought hard to make the system work, fought hard to make rehabilitation more than a numbers game, fought hard to bring respect to the profession. As if that weren’t enough, he was then burdened with cancer.
It would have been easy for Gene to mark time these past few years, not to make waves, and just “get by” on his job. But he chose not only to stay on the job, living out his own philosophy (reported in Louisiana Rehabilitation’s June 1989 issue, in which he said, “I2■ ■ ■ given the opportunity, almost anyone can work”), he also chose the path less traveled. Gene could not ignore what he thought were improprieties in rehabilitation, so make waves he did — big ones. Some people said the excitement of the battle itself is what kept him going long after others would have thrown in the towel. Others said he knew time was of the essence and, like others to whom death is a tangible thing, wanted to make a statement, leave his mark.
Whatever his reasons, Gene continued to fight for what he believed was right and confronted ethical violations head-on, knowing that the repercussions could be severe. A counselor whom he decertified in his last few months was eventually reinstated, after the counselor’s attorney harassed Gene at work, at home, and even during his chemotherapy treatments. Appalling actions, but Gene never flinched. He lost that battle, as he eventually lost to cancer. But, he would have noted, chuckling, that he lost a lot of skirmishes in his life. What really mattered was that he spoke out for what he believed. I wonder if I would have had the courage to stand up, alone, as it turned out for Gene, for what was right.
It will be difficult to replace Gene. His standards were very high ... I would not want to be the counselor who followed that act. Gene touched all of our lives in one way or another. When I think back on the more than ten years that I knew Gene Bohlken, I am struck by his stamina. He was feisty, outspoken, and had an unwavering belief in rehabilitation. His inner strength endured till the very end.
I like to think of Gene as a warrior. I see him with a shiny helmet, not a cap to cover his hair loss. I see him in a knight’s armor, not the slipper-shoes he wore because his feet were swollen and brittle. I see him on a powerful horse, not walking around on crutches. In this picture, he is smiling, strong and confident, ready to defeat the next opponent — ineffective counseling, lax ethical standards, poor rehabilitation plans, compromised beliefs. I like *217 that image of Gene — Rehabilitation Warri- or. I think he would like it, too.
Hebert alleged that he was defamed by the following excerpt from the article: “A counselor whom he decertified in his last few months was eventually reinstated, after the counselor’s attorney harassed Gene at work, at home, and even during his chemotherapy treatments. Appalling actions, but Gene never flinched.” Hebert submitted that he was the “counselor” referred to in the article and that, due to the nature of the publication and its approximate 400 recipients, many ^readers knew that the article was referring to him. He acknowledged that he had been decertified but showed that he had been reinstated prior to any contact between his attorney and Bohlken.
Following a trial, the district court entered judgment against Jennifer Palmer and LARP and awarded Hebert $250 in damages. It found that, while the article did not identify Hebert, some people in the industry were aware that he had experienced some type of problem with his certification. The court noted that the words at issue were not defamatory per se but that some readers of the article would believe that Hebert would hire an attorney to harass a dying man at home, at work, and even during chemotherapy treatments. The statements were determined to be “essentially false” as Hebert’s attorney did not have any contact with Bohlken until after Hebert’s recertification, and then only to subpoena him for a deposition. The court concluded that Ms. Palmer acted with reckless disregard for whether or not the statements were true because she never made an attempt to contact Hebert or his attorney to verify Bohlken’s statements. The court of appeal affirmed [1]. We reverse, finding merit in Ms. Palmer’s argument that plaintiff failed to prove malice.[2]
In order to maintain an action for defamation, the plaintiff must prove the following elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101 (La.1988). Proof of malice is required for words that are not defamatory per se. To show malice, plaintiff must prove that the statements were known to be false Uor made with reckless disregard for whether the statements were true or false. Matassa v. Bel, 246 La. 294, 164 So.2d 332 (La.1964).
Assuming, but not deciding, that the statements are defamatory, plaintiff has not proven the essential element of malice. Undoubtedly, the aim of Ms. Palmer’s article was to commemorate the life of a dear and esteemed colleague. The mention of the perceived harassment suffered by Bohlken at the hands of an attorney for an unnamed decertified “counselor,” and his resiliency in the face of adversity, is merely the writer’s illustration of only one of Bohlken’s admirable traits. There is no evidence that Ms. Palmer thought the statements were false. Further, Ms. Palmer had no reason to doubt Bohlken’s firsthand account of a distressing experience during his terminal illness, she had no obligation to verify the accuracy of Bohlken’s statements, and thus did not act with a reckless disregard for whether or not the statements were true. Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).
LEMMON, J., concurs and assigns reasons.
DENNIS, J., would grant and docket.
MARCUS, J., not on panel.

. Only Jennifer Palmer appealed the trial court ruling.

. Palmer also strenuously argues that the lower courts erred: (1) in holding that the statements defamed Hebert; (2) in holding that the state-mente were not substantially true; and (3) in failing to recognize that Hebert was a public official or public figure. Our decision renders these remaining assignments of errors moot.